# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIO-RAD LABORATORIES, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>    Plaintiffs,<br><br>        v.<br><br>10X GENOMICS, INC.,<br><br>    Defendant. | Civil Action No. 1:19-cv-12533-WGY<br><br>**DEMAND FOR JURY TRIAL** |

**10X GENOMICS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION IN THE ALTERNATIVE TO SEVER AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) <u>CLAIMS RELATING TO U.S. PATENT NO. 10,190,115</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ............................................................................................... 3

III.  LEGAL STANDARD........................................................................................ 7

IV.  ARGUMENT .................................................................................................... 8

    A.  This Court Should Sever the Claims Related to the 115 Patent ........................... 8

    B.  This Court Should Transfer the 115 Patent Claims to California ....................... 10

        1.  The 115 Patent Claims Could Have Been Brought in N.D. Cal. ............. 10

        2.  The Private Interest Factors Overwhelmingly Favor Transfer ............... 10

            a.  Plaintiff's third choice of forum: Massachusetts ........................ 10

            b.  All, or almost all, relevant evidence is located in N.D. Cal......... 12

            c.  The convenience of the witnesses warrants transfer to N.D. Cal ................................................................................................ 13

            d.  Practical considerations favor N.D. Cal........................................ 15

        3.  The Public Interest Factors Overwhelmingly Favor Transfer ................. 16

            a.  N.D. Cal.'s time to trial is comparable ........................................ 16

            b.  N.D. Cal.'s strong local interest in this local controversy .......... 17

            c.  Judicial economy favors transfer to N.D. Cal.............................. 19

            d.  Familiarity with the applicable laws ............................................ 20

            e.  Imposition on jurors for a case unrelated to their community ..... 20

V.  CONCLUSION................................................................................................. 20

## I.    INTRODUCTION

Venue for Bio-Rad's U.S. Patent No. 10,190,115 ("the 115 Patent") claims is improper in this District, so those claims should be dismissed as explained in 10X's Motion to Dismiss filed concurrently with this Motion. However, should the Court find that venue is proper, this Court should sever and transfer Bio-Rad's claims relating to the 115 Patent to the United States District Court for the Northern District of California ("N.D. Cal.") pursuant to 28 U.S.C. § 1404(a) because both the private and public interest factors overwhelmingly favor transfer. *See Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000).[1]

It cannot be disputed that the 115 Patent claims could have been brought in N.D. Cal., where 10X maintains its headquarters. Its United States center for research, development, design, implementation, engineering, supply chain, manufacturing, sales, distribution, marketing, pricing, and financial activities related to the accused products are also located in N.D. Cal. Wyatt Decl., ¶ 2. 10X has no place of business, and no significant presence, in Massachusetts. Wyatt Decl., ¶ 3. Bio-Rad's principal place of business is also in N.D. Cal. ECF No. 1, ¶ 4. Bio-Rad's center for its research, development, engineering, supply chain, manufacturing, sales, distribution, marketing, and financial activities related to its ddSEQ and ddPCR products, specifically identified in Bio-Rad's Complaint, is also there.[2] ECF No. 1 at ¶¶ 16, 18, 19. Bio-Rad has failed to plead that any

---

[1] Any connections Harvard has to this District are irrelevant to the 115 Patent claims because, for those claims, Harvard is not a co-plaintiff, Harvard has no ownership interest, and no one from Harvard is a named inventor. The remaining claims in this case relating to the 444 and 277 Harvard patents are subject to a forum selection clause in the license between 10X and Harvard, which requires disputes relating to that license be litigated in Massachusetts (including, *e.g.*, 10X's implied license and other defenses). *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, No. 1:19-cv-01699-RGA (D. Del. Sept. 11, 2019) ("1699 case"), ECF No. 18-1, Ex. 3 ¶ 11.6. 10X is not moving to transfer those Harvard patent claims. The 115 Patent has no connection to Harvard or that license and is not subject to that forum selection clause.

[2] Bio-Rad itself stressed the importance of this factor in a 2019 motion to transfer a case out of Delaware. Ex. 2, *GE Healthcare Bio-Sciences AB v. Bio-Rad Labs., Inc.*, C.A. No. 18-1899-CFC, ECF No. 11 at 4 (D. Del. Jan. 30, 2019),.

sources of evidence or witnesses specific to the 115 Patent are located in Massachusetts.

California has a strong local interest in the 115 Patent claims. The above-identified numerous relevant activities for both companies are local to N.D. Cal. Moreover, Bio-Rad's claims under the 115 Patent put the work and reputation of 10X's founder and CEO, Dr. Saxonov at issue. Dr. Saxonov is the sole named inventor on the 115 Patent. He resides in N.D. Cal. Bio-Rad claims that Dr. Saxonov's work at his prior company, QuantaLife, which Bio-Rad acquired, led to the 115 Patent. But Dr. Saxonov signed a declaration, submitted to the U.S. Patent Office during the 115 Patent's prosecution, explaining that he "did not invent the subject matter of the currently pending claims of the Bio-Rad Continuations prior to [his] departure from Bio-Rad, and the disclosures of the Bio-Rad Continuations do not reflect that any such invention occurred as of the time" the parent applications were filed. Ex. 1 ¶¶ 4, 14 [Saxonov Decl.].[3] Importantly, Dr. Saxonov declared:

> At the time of the application, I had not conceived of using any non-liquid vehicle for delivering barcode sequences into partitions for partition tagging. Indeed, at no point prior to leaving Bio-Rad did I conceive of using any such non-liquid vehicle. It was not until after I had left Bio-Rad and started working at 10X Genomics that the gel beads in l0X's products were first conceived and developed.

*Id*. ¶ 8; *see also* ¶¶ 14-18. Bio-Rad is nonetheless interpreting the 115 Patent claims broadly to cover 10X technology invented only after Dr. Saxonov started working at 10X. Bio-Rad's allegations directly contradict Dr. Saxonov's declaration and put his work and reputation at issue.

This District is Bio-Rad's third choice of forum and thus, should be given little or no weight. Bio-Rad first chose to sue 10X on U.S. Patent No. 9,347,059 ("the 059 Patent"), the 115 Patent's parent, in N.D. Cal. Bio-Rad lost its attempt to prevent staying the 059 Patent claims there. *See Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 3:17-cv-04339, ECF No. 29  (N.D. Cal. July 31,

---

[3] Citations to "Ex. 1" are to the exhibits to the Declaration of Jennifer Robinson filed herewith.

2017) ("4339 case"), (Bio-Rad's opp. to 10X's mot. to stay 059 Patent claims in 4339 case). As an apparent end-run around the stay of its N.D. Cal claims, Bio-Rad then chose to file claims from the related 115 Patent in the District of Delaware (Bio-Rad's second choice of forum), only to dismiss that case after 10X filed motions to dismiss and transfer. Bio-Rad now brings those same 115 Patent claims in Massachusetts (Bio-Rad's third choice of forum), while the 059 Patent remains in N.D. Cal. Bio-Rad admitted in its Motion to Consolidate that "the 059 patent has the same named inventor and specification as the 115 patent, ***and thus involves the same legal and factual issues*** that will be litigated in connection with the 115 patent." *Bio-Rad v. Stilla*, Nos. 1:19-cv-11587-WGY, -12533-WGY, ECF No. 61 at 2 n.2.[4] Bio-Rad thus cannot dispute that issues of infringement, inventorship, and invalidity that are highly related to the 115 Patent arise in the already filed 4339 case. Further, adding to its strategy to circumvent the N.D. Cal. stay, Bio-Rad informed this Court that it now plans to attempt to add the 059 Patent to this case in Massachusetts. Bio-Rad has not identified any legal means that would allow it to transfer the 059 Patent to this Court from N.D. Cal., where it is stayed and also subject to 10X's declaratory judgment counterclaims. In any event, this Court should not countenance Bio-Rad's gamesmanship.

## II.     BACKGROUND

10X designed the accused Next GEM product line to avoid any plausible allegation that 10X was using patents that Bio-Rad had previously asserted against it in prior litigation. On September 11, 2019, the afternoon before 10X's IPO, and in an attempt to derail that IPO, Bio-Rad sued 10X in the District of Delaware asserting infringement of U.S. Patent No. 8,871,444 ("the 444 Patent") against 10X's Next GEM platform. *See* ("1699 case"), ECF No. 1 at ¶¶ 22, 24. On November 5, 2019, Bio-Rad joined Harvard as a co-plaintiff and further asserted U.S. Patent

---

[4] Emphasis supplied throughout unless otherwise noted.

No. 9,919,277 ("the 277 Patent") and the 115 Patent. *See* 1699 case, ECF No. 8. Bio-Rad alleged that it has licensed the 444 and 277 patents (collectively "the Harvard patents") from United Kingdom Research and Innovation and from Harvard. *See id.*, ¶¶ 29, 46.

On December 4, 2019, 10X filed in the 1699 case motions to transfer the 115 Patent to N.D. Cal. and to dismiss. In response, Bio-Rad dismissed the 1699 case on December 18, 2019 and filed this action on the same day, asserting the same claims on the same three patents.

Bio-Rad alleges that it alone owns all rights in the 115 Patent. ECF No. 1, ¶¶ 3, 4, 63, Prayer for Relief. Harvard owns no rights in the 115 Patent and thus is not a co-Plaintiff with Bio-Rad as to the 115 Patent claims. *Id.*

The 115 Patent names 10X's own CEO, Dr. Serge Saxonov, as the sole inventor, and is a continuation of the 059 Patent. The 059 and 115 Patents thus share the same specification. ECF No. 1-17 [115 Patent] at 1. Bio-Rad alleges that the 115 Patent is based on Dr. Saxonov's work at his prior company, QuantaLife, which Bio-Rad acquired. It is not. Although the provisional application that led to the 115 Patent's parent, the 059 Patent, was filed before Dr. Saxonov left Bio-Rad, Bio-Rad did not file the 115 Patent's application until about two years after Dr. Saxonov left Bio-Rad, and Dr. Saxonov declared at the U.S. Patent Office that he "did not invent the subject matter of the [then-]pending claims of the Bio-Rad Continuations prior to [his] departure from Bio-Rad." Ex. 1 ¶¶ 4, 14 [Saxonov Decl.].

Multiple litigations between 10X and Bio-Rad, either in N.D. Cal. or in the ITC as a counterpart to an N.D. Cal. case, are highly related to this case.

1.    **4339 N.D. Cal Case:** Bio-Rad has previously asserted the 059 Patent, parent of the 115 Patent, against 10X in N.D. Cal. *Bio-Rad Laboratories, Inc. v. 10X Genomics, Inc.*, No. 3:17-cv-04339 (N.D. Cal. July 31, 2017) ("4339 case"), ECF No. 1 at 18-23. Bio-Rad filed the ITC

counterpart of the 4339 case, the 1068 ITC case, asserting many of the same patents, but Bio-Rad did not assert the 059 Patent in the 1068 ITC case. The 4339 case has been stayed (including the 059 Patent claims, over Bio-Rad's objection) until the 1068 ITC determination becomes final and any appeals to the Federal Circuit are completed, and Bio-Rad confirmed that the stay is appropriate as recently as November 12, 2019. Ex. 3, 4339 case, ECF No. 52 (Jt. Resp. & Status Rep.) at 2. The Commission issued its final determination on December 18, 2019, finding, *inter alia*, that Next GEM does not infringe the patents asserted in the 1068 ITC case.

2.    **1100 ITC case:** 10X filed an ITC case, the 1100 ITC case, against Bio-Rad asserting 10X patents. Bio-Rad has claimed at the ITC that it has an ownership interest in 10X's patents based on the 059 Patent's specification, which the 115 Patent shares. Ex. 4 [1100 Inv. Initial Det'n on Violation of Section 337] at 150. The present target date for the 1100 Investigation is January 22, 2020. 10X won on all ownership issues before the ITC Administrative Law Judge. *Id*. at 155.

3.    **209 N.D. Cal. Case:** 10X filed the district court counterpart of the 1100 ITC case also in N.D. Cal. *10X Genomics, Inc. v. Bio-Rad Labs., Inc.*, No. 4:18-cv-00209 (N.D. Cal.) ("209 case"). The 209 case has been stayed until the 1100 ITC determination becomes final and any appeals to the Federal Circuit are completed.

Before Bio-Rad and 10X chose to file multiple lawsuits in N.D. Cal. federal court, Bio-Rad also chose to litigate ownership issues in California. On September 22, 2014, Bio-Rad sued 10X in the Superior Court of the State of California for the County of Contra Costa (which is within N.D. Cal) for a declaratory judgment of intellectual property ownership and alleged trade secrets misappropriation, and a day later, filed for arbitration of alleged violations of non-competition and non-solicitation agreements, unfair competition, conversion, and interference

with contract against 10X founders, including Dr. Saxonov, in San Francisco. The arbitrator held that each of Bio-Rad's claims failed on the merits or had been abandoned and dismissed, and the parties settled the trade secret case.

Bio-Rad asserted in its motion to consolidate this case with its suit against Stilla in this District that it intends to attempt to add the 059 Patent to this suit and that "the 059 patent has the same named inventor and specification as the 115 patent, and thus involves the same legal and factual issues that will be litigated in connection with the 115 patent." *Bio-Rad Labs., Inc. v. Stilla Techs., Inc.*, Nos. 1:19-cv-11587-WGY, -12533-WGY (D. Mass. Dec. 30, 2019), ECF No. 61 at 2 n.2. 10X will object to any attempt to transfer the 059 Patent from N.D. Cal to D. Mass. Thus, 10X (and Bio-Rad) expect at least the following highly related issues—inventorship, invalidity, and non-infringement—to be litigated in this case and Bio-Rad's 4339 N.D. Cal. case, and Bio-Rad may also seek to raise related issues in 10X's 209 N.D. Cal. case, as it did in the 1100 ITC case.

10X is a Delaware corporation, headquartered in Pleasanton, California. ECF No. 1, ¶ 6. Bio-Rad is a Delaware corporation, headquartered in Hercules, California. *Id.*, ¶ 4. Regarding the location of various United States activities:

- 10X's headquarters and the United States center for its research, development, design, implementation, engineering, supply chain, manufacturing, sales, distribution, marketing, pricing, and financial activities related to its products, including the accused Next GEM products, are located at 10X's Pleasanton, California facility. Wyatt Decl., ¶ 2.

- The majority of 10X's accused products are manufactured in California. No manufacturing of 10X's accused products occurs in Massachusetts. *Id.*, ¶¶ 4-6.

- 428 of 10X's 625 employees are located in N.D. Cal. Ropp Decl., ¶ 2. All of 10X's Senior

Management personnel, including its CEO, Serge Saxonov, work at 10X's Pleasanton, California headquarters. Wyatt Decl., ¶ 7. 10X has no offices in Massachusetts. Ropp Decl., ¶ 3. In Massachusetts, 10X has only seven employees: three sales representatives and four Field Application Scientists. *Id.*, ¶ 4. Each of the seven employees works from his or her home, not 10X's places of business. *Id.*, ¶¶ 3-8. The Field Applications Scientists also travel to customer sites to provide on-site training on the 10X products. *Id.*, ¶ 4. The seven employees who live in Massachusetts sell to or support 10X customers in multiple states. *Id.*, ¶ 8. 10X does not use these employees' homes as a distribution center for products, literature, or any inventory. *Id.*, ¶ 6. 10X keeps the vast majority of its records, including nearly all of its documents relating to its products, including the accused products in N.D. Cal. Wyatt Decl., ¶ 6.

## III.    LEGAL STANDARD

In a motion to transfer, a defendant must show "that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. *Iragorri*, 203 F.3d at 12. "While a plaintiff receives 'some degree of deference for his original choice of forum,' a foreign plaintiff's decision receives less deference" than a plaintiff's decision to bring suit in its home forum because the assumption that the chosen forum is appropriate is in such cases "'less reasonable.'" *Hyewoong Yoon v. Seyeon Lee*, Nos. 19-10278-PBS, 10280-PBS, 10281-PBS, 2019 U.S. Dist. LEXIS 219029, at *13-14 (D. Mass. Dec. 20, 2019) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). A plaintiff's second, or *a fortiori* its third, choice of forum "is given little weight." *Glaxo Grp. v. Genentech, Inc.*, No. C 10-00675 JSW, 2010 U.S. Dist. LEXIS 46440, at *12 (N.D. Cal. Apr. 12, 2010). In ruling on § 1404(a) motions, the First Circuit and this District consider the private and public interests described in *Iragorri*, each of which 10X discusses in detail below and on balance

overwhelmingly favor transfer. *See, e.g.*, *Interface Partners Int'l, Ltd. v. Hananel*, 575 F.3d 97, 101 (1st Cir. 2009); *Shinya Imamura v. GE*, 371 F. Supp. 3d 1, 11 (D. Mass. 2019).

The private interest factors include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [the] possibility of view of premises, if view would be appropriate to the action; … [and the trial judge's consideration of] all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 203 F.3d at 12 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The public interest factors include "the administrative difficulties of docket congestion; the general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens; the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." *Id.* (quoting *Gilbert*, 330 U.S. at 508-09). "The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

## IV.   ARGUMENT

### A.   This Court Should Sever the Claims Related to the 115 Patent

Under Federal Rule of Civil Procedure 21, "[t]he court may [] sever any claim against a party." *See Get in Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 195 (D. Mass. 2016); *Excentus Corp. v. Giant Eagle, Inc.*, C.A. No. 13-178, 2014 U.S. Dist. LEXIS 30193, at *27-30 (W.D. Pa. Mar. 10, 2014). A court may sever the claims in the case, retain jurisdiction over those for which venue and forum is proper and convenient, and transfer the other claims to the appropriate court. *Get in Shape*, 167 F. Supp. 3d at 195.

The 115 Patent claims should be severed because the 115 and Harvard patents are unrelated. Bio-Rad asserts that it is the sole assignee and owner of the 115 Patent, and the 115 Patent lists Dr.

Saxonov as the only named inventor. The 115 Patent claims priority to April 25, 2011. ECF No. 1-17. The Harvard patents, in contrast, are allegedly exclusively licensed from Harvard and United Kingdom Research and Innovation, identify a completely different set of named inventors, and claim priority to a different time period, October 8, 2004. ECF No. 1, ¶¶ 31, 48; ECF No. 1-3; ECF No. 1-16. Because 10X has its own patent license agreement with Harvard, the Harvard patents, but not the 115 Patent, are subject to a forum selection clause requiring the Harvard patents claims to be brought in Massachusetts. The Harvard patents also raise additional implied license issues, also unrelated to the 115 Patent. As discussed in more detail in 10X's Motion to Dismiss, filed concurrently herewith, the only overlap Plaintiffs allege between the Harvard Patents and the 115 Patent infringement claims are the accused products and general technology area. *See* ECF No. 1, ¶ 13. This overlap should not outweigh the judicial economy, convenience, and fairness considerations that strongly favor the 115 Patent claim to be litigated in N.D. Cal. and not this District.

Further, as summarized above and explained further below, the Northern District of California—not Massachusetts—is the proper forum for resolution of Bio-Rad's 115 Patent claims. The analysis in *Xilinx, Inc. v. Invention Investment Fund I LP*, No. C 11-0671 SI, 2011 U.S. Dist. LEXIS 81986 (N.D. Cal. July 27, 2011), is illustrative. In *Xilinx*, four of the sixteen patents at issue in N.D. Cal. were at issue in a previously filed case in Delaware. *Id.* at *3. The court found that:

> The concurrent use of resources to adjudicate identical issues in different district courts is exactly the "wastefulness of time, energy and money that § 1404(a) was designed to prevent." Further, any decision made on the claims involving the "overlapping" patents in this Court may affect the current proceeding in the District of Delaware.

*Id.* at *11-12 (internal citations omitted). Here, the 115 Patent and related 059 Patent claims likewise present overlapping issues that risk wastefulness of time, energy and money and inconsistent rulings and should be decided together.

**B.      This Court Should Transfer the 115 Patent Claims to California**

The Court should transfer the 115 Patent claims to N.D. Cal because those claims clearly could have been brought in N.D. Cal., and the *Iragorri* public and private interest factors strongly favor transfer to N.D. Cal.

**1.      The 115 Patent Claims Could Have Been Brought in N.D. Cal.**

Bio-Rad cannot dispute that the 115 Patent claims could have been brought in N.D. Cal. Under 28 U.S.C. § 1400(b), venue is proper "where the defendant has committed acts of infringement and has a regular and established place of business." Because 10X is headquartered in N.D. Cal. and the alleged acts of infringement, such as "controlling the design and manufacture of, … Next GEM platform," or "dissemination of promotional and marketing materials relating to the Next GEM platform," occur in that District, this action could have been brought there. ECF No. 1 at ¶¶ 61-76. This case should be transferred to N.D. Cal. because N.D. Cal. is "an adequate alternative forum" and "considerations of convenience and judicial efficiency strongly favor litigating the claim" there. *See Iragorri*, 203 F.3d at 12.

**2.      The Private Interest Factors Overwhelmingly Favor Transfer**

**a.      Plaintiff's third choice of forum: Massachusetts**

Plaintiff's choice of forum may weigh in favor of transfer and is at best neutral. *Glaxo*, 2010 U.S. Dist. LEXIS 46440, at *12 (finding where Plaintiffs were foreign corporations and N.D. Cal. "was their second choice of forum" that the plaintiff's choice of forum factor "weigh[ed] in favor of transfer"). "While a plaintiff receives 'some degree of deference for his original choice of forum,' a foreign plaintiff's decision receives less deference than [a plaintiff's decision to bring suit in its home forum] because 'the assumption that the chosen forum is appropriate [is in such cases] less reasonable.'" *Hyewoong Yoon*, 2019 U.S. Dist. LEXIS 219029, at *13-14 (quoting *Sinochem*, 549 U.S. at 430). A plaintiff's second, or its third, choice of forum "is given little

weight." *Glaxo*, 2010 U.S. Dist. LEXIS 46440, at \*12; *see also Wright v. Interbank Capital, Inc.*, No. C 99-0091 MMC (ARB), 1999 U.S. Dist. LEXIS 8113, at \*14 (N.D. Cal. May 19, 1999).

On July 31, 2017, Bio-Rad made its first choice of forum to litigate issues of inventorship, invalidity, and non-infringement related to the 059 and 115 Patents by asserting the 059 Patent in N.D. Cal. in the 4339 case. Bio-Rad also first raised ownership issues in its arbitration and state court case, both of which Bio-Rad filed in California. Bio-Rad again raised ownership issues related to the 059 and 115 Patents when it falsely claimed in 10X's ITC case (the 1100 investigation) that Bio-Rad has an ownership interest in the 10X patents asserted there, based on disclosures found in the specification shared by the 059 and 115 Patents. The district court companion to that ITC case (the 209 case) was filed by 10X also in N.D. Cal. and is expected to raise the same issues involving Bio-Rad's ownership claims relating to the 059 and 115 Patents.

Bio-Rad is using this suit to expand the inventorship, invalidity, and non-infringement disputes related to the 059 and 115 Patents from California into a new forum, to preempt the jurisdiction and venue Bio-Rad first chose, and to preempt 10X's long-before chosen forum for those related issues. *Contour IP Holding, LLC v. GoPro, Inc.*, 2017 U.S. Dist. LEXIS 123273, at \*13-21 (D. Del. July 6, 2017)*; see also Hyewoong Yoon*, 2019 U.S. Dist. LEXIS 219029, at \*13-14 (quoting *Sinochem*, 549 U.S. at 430); *Glaxo*, 2010 U.S. Dist. LEXIS 46440, at \*12. Bio-Rad admitted in a transfer motion in a different case that where "Plaintiffs' previous litigation alleging infringement of a patent in the family of the patents-in-suit … was in [another forum,]" the plaintiff's choice of forum is "at best neutral with respect to Plaintiffs' decision to file [a second case in a second forum]." Ex. 2, *GE Healthcare*, ECF No. 11 at 10 (Bio-Rad's brief in support of transfer in *GE Healthcare*).

Under these circumstances, Plaintiff's choice of forum weighs in favor of transfer or is at

best neutral. *Glaxo*, 2010 U.S. Dist. LEXIS 46440, at *12. The facts here are akin to those in *Glaxo*, where Plaintiffs brought an action initially in S.D. Florida, and Defendants moved to dismiss or transfer the case to C.D. Cal. *Id.* at *1-2. In response, Plaintiffs dismissed the case and filed in N.D. Cal. *Id.* at *2. In N.D. Cal., Defendants again moved to transfer the case to C.D. Cal. *Id.* The N.D. Cal. court found that the "plaintiff's choice of forum" factor "weigh[ed] in favor of transfer" because plaintiffs were "foreign corporations" and "the Northern District of California was their second choice of forum." *Id.* at *10-12. This case presents almost identical circumstances to those present in *Glaxo*, and the result should be no different: granting the motion to transfer out of Plaintiffs' second (or third) choice of forum.

Bio-Rad's choice of forum in the District of Massachusetts, even if it were not its third choice, should also be given little or no weight because Bio-Rad is not a resident of Massachusetts and has not alleged facts showing that it has significant ties to Massachusetts specific to the 115 Patent. Where, as here, the plaintiff does not bring suit in its home forum, the court should not afford plaintiff's choice much weight. *See, e.g.*, *Hyewoong Yoon*, 2019 U.S. Dist. LEXIS 219029, at *13-14 (quoting *Sinochem*, 549 U.S. at 430). Indeed, the Federal Circuit has confirmed that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, [] that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) ("apply[ing] the law of the regional circuit, in this case the Third Circuit," and granting mandamus to transfer case from Delaware to N.D. Cal.).

### b.      All, or almost all, relevant evidence is located in N.D. Cal

"[T]he relative ease of access to sources of proof" favors transfer to N.D. Cal. because all or nearly all relevant documents are located there. *Iragorri*, 203 F.3d at 12; *see Blackbird Tech LLC v. Cloudfare, Inc.*, C.A. No. 17-283, -284, 2017 U.S. Dist. LEXIS 167860, at *28 (D. Del. Oct. 11, 2017) ("If most of the evidence resides in the proposed transferee forum and none resides

in the transferor forum, it is error to not weigh this factor heavily in favor of transfer."). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). 10X keeps the vast majority of its records, including nearly all of its documents relating to its accused Next GEM products, in N.D. Cal. Wyatt Decl., ¶ 6. Bio-Rad is also headquartered in N.D. Cal. At this time, 10X is unaware of any records located in Massachusetts relevant to Bio-Rad's 115 Patent claims.

  **c.**  **The convenience of the witnesses warrants transfer to N.D. Cal**

  The "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," favors transfer to N.D. Cal. because (1) the willing party witnesses expected to be relevant to Bio-Rad's 115 Patent claims are located in N.D. Cal. and can more conveniently attend trial in N.D. Cal., and (2) the third-party witnesses of which 10X is presently aware that may be relevant to Bio-Rad's 115 Patent claims would be subject to compulsory process in N.D. Cal. but not in this district. *Iragorri*, 203 F.3d at 12; *see GE Capital Leasing Corp. v. Parametric Tech. Corp.*, Civil No. 07-11416, 2010 U.S. Dist. LEXIS 105011 at *21 (D. Mass Sept. 30, 2010); *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 104 (1st Cir. 2009); *Semcon Tech, LLC v. Intel Corp.*, Civil No. 12-531, -534, 2013 U.S. Dist. LEXIS 2596, *7-8, 17-18 (D. Del. Jan 8, 2013).

  "The convenience and location of witnesses is probably ***the most important factor*** for the court to consider in a motion to transfer." *Rosenthal v. Unum Grp.*, C.A. No. 17-cv-40064, 2018 U.S. Dist. LEXIS 39937, *4 (D. Mass. Mar. 12, 2018); *In re Genentech,* 566 F.3d at 1345 (applying Fifth Circuit law and holding district court abused discretion in denying transfer from Texas to California where "a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas").

This factor favors N.D. Cal. where 10X has nearly all of its relevant employees, documents, and other evidence. Ropp Decl., ¶ 2; Wyatt Decl., ¶¶ 6, 7; *see Rosenthal*, 2018 U.S. Dist. LEXIS 39937, at *4-5. 10X has only seven employees in Massachusetts, all of whom work from home, not 10X's places of business. Ropp Decl., ¶¶ 3-8. Like 10X, Bio-Rad is headquartered in N.D. Cal. Most, if not all, party witnesses are thus expected to be in N.D. Cal., including Dr. Saxonov, the 115 Patent's sole named inventor.

The logistical and operational costs to the parties' employees, and their counsel in N.D. Cal., to travel to Massachusetts will be much greater than the much easier and shorter travel within N.D. Cal. While the parties are able to bear the costs in either forum, the higher costs and longer travel time to litigate in Massachusetts will cause a greater relative burden to 10X than to Bio-Rad given their disparate sizes. 10X had annual sales of $146.3 million in 2018 and over 600 employees (1699 case, ECF No. 18-1, Ex. 6; Ropp Decl., ¶ 2), whereas Bio-Rad had annual sales of over $2.2 billion in 2019 and more than 8,000 employees (Bio-Rad Laboratories, Inc., https://www.bio-rad.com/en-us/corporate/corporate-facts?ID=MR8IQU15 (last visited Jan. 21, 2020)).

The convenience of non-party witnesses, and the availability of compulsory process for their attendance if unwilling, also favors N.D. Cal. At this time, 10X is unaware of any potential witnesses relevant to Bio-Rad's 115 Patent claims in Massachusetts. The potential witnesses of which 10X is aware are subject to subpoena in N.D. Cal., not Massachusetts. For example, Bio-Rad's prosecuting attorney, Matthew Hinsch, may be a witness due to the 115 Patent's inventorship and invalidity issues, including Dr. Saxonov's declaration submitted during prosecution. Mr. Hinsch is a partner at a law firm in N.D. Cal. As another example, likely prior art inventors include Stephen Quake who lives in Stanford, California and Rustem Ismagilov who lives in Altadena, California. They are named inventors of patents cited as prior art on the face of

the 115 Patent. It would be more time-consuming and expensive for most, if not all, party witnesses and Messrs. Hinsch, Quake, and Ismagilov to travel to Massachusetts compared with N.D. Cal., and Messrs. Hinsch, Quake, and Ismagilov are subject to the subpoena power of N.D. Cal., not the Massachusetts district court.

Given both 10X and Bio-Rad are headquartered in N.D. Cal., any ex-employees relevant to Bio-Rad's 115 Patent claims (and any current employees that may leave either company during this litigation) are more likely to be subject to the Court's subpoena power in N.D. Cal. than in this District, and N.D. Cal. is likely to be more convenient for them to attend trial. *Wacoh Co. v Kionix, Inc.*, 845 F. Supp. 2d 597, 602-03 (D. Del. 2012) (finding that the "convenience of the witnesses" favors transfer and recognizing that "[e]x-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) would not be subject to this Court's subpoena power, but would likely not move out-of-state and therefore would continue to be subject to the subpoena power in the Northern District of California or the Northern District of New York"); *see also Signal Tech, LLC v. Analog Devices, Inc.*, Civil No. 11-1073, 2012 U.S. Dist. LEXIS 46822, *7-8 (D. Del. Apr. 3, 2012). Similarly, "more of [the likely trial witnesses] are more likely to be in the [Northern District of California] than in [Massachusetts] or within 100 miles of [Boston]" and, "[i]f there is a trial, and if there are one or more necessary witnesses who will only testify if subpoenaed, there is a statistically greater likelihood that such witnesses would be within the subpoena power of [N.D. Cal.] than within the subpoena power of the District of [Massachusetts].... The odds [] are that such people [witnesses who would be unavailable in one location but not the other] exist, and that they are in [N.D. Cal.]." *IpVenture, Inc. v. Acer, Inc.*, No. 1:11-cv-00588, 879 F. Supp. 2d 426, 435-36 (D. Del. 2012)."

### d.    Practical considerations favor N.D. Cal

"[P]ractical problems that make trial of a case easy, expeditious, and inexpensive" similarly

favor transfer here where both 10X and Bio-Rad are headquartered in N.D. Cal. and the lead counsel for both parties are also located in N.D. Cal., eliminating the need for local counsel there. *Iragorri*, 203 F.3d at 12. This case "is a business dispute between two companies … with extensive connections to" N.D. Cal., and most witnesses will find trial there easier. *See Semcon*, 2013 U.S. Dist. LEXIS 2596 at *9. A trial here "is very likely to be less easy and more expensive for" both parties than a trial in N.D. Cal., because of travel considerations and expenses for witnesses and counsel. *See id.* at *19; *Wacoh*, 845 F. Supp. 2d at 603 ("[I]t would be less expensive for the defendants to litigate where their operations are. It would also interfere less with the defendants' business operations if there were no travel to Delaware involved."); *IpVenture*, 879 F. Supp. 2d at 433 ("estimat[ing] that trial in the Northern District of California would be ***hundreds of thousands of dollars less expensive***, due to its more convenient location and the lack of need for local counsel").

### 3.   The Public Interest Factors Overwhelmingly Favor Transfer

### a.   N.D. Cal.'s time to trial is comparable

"[T]he administrative difficulties of docket congestion" factor is neutral. *Iragorri*, 203 F.3d at 12. This case has been ordered to be trial ready by April 2021. If the 115 Patent is transferred to N.D. Cal., it likely will be assigned to Judge Chhabria because the 059 Patent is currently before Judge Chhabria in the 4339 case. Because the 059 Patent is stayed, 10X expects to move to stay the 115 Patent as well. Bio-Rad has agreed that the 059 and 115 Patents should be tried together due to their overlap in both factual and legal issues. *Bio-Rad v. Stilla*, Nos. 1:19-cv-11587-WGY, -12533-WGY, ECF No. 61 at 2 n.2. Thus, staying the 115 Patent as well is the right approach.

If the N.D. Cal court declines to stay the 115 Patent, the 115 Patent likely is to be tried in roughly the same period as the Harvard patents in this case. Judge Chhabria's scheduling order states that "[t]he trial date will almost always be 12-16 months after the date the original complaint

was filed." Ex. 5, J. Chhabria's Civil Standing Order, at 5. It further states that "[a]bsent extraordinary circumstances, the Court will not continue a trial date." *Id.* at 4. Therefore, if the 115 Patent is transferred to N.D. Cal. and proceeds to trial, it is likely to go to trial in a similar timeframe as this case.

### b.   N.D. Cal.'s strong local interest in this local controversy

"[T]he general goal of 'having localized controversies decided at home,' and concomitantly, ease of access to the proceedings on the part of interested citizens" favors transfer. *Iragorri*, 203 F.3d at 12 (quoting *Gilbert*, 330 U.S. at 508-09). "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

N.D. Cal. has a significant interest in this dispute because 10X's and Bio-Rad's businesses and R&D are both headquartered there, and the party and third-party witnesses and documents are located there, as addressed above. "[E]ven if the allegedly infringing products are sold nationwide, where at least some of the research and development activities relating to those products occurred in the proposed transferee district, the 'location of operative events' factor will weigh in favor of transfer." *Blackbird*, 2017 U.S. Dist. LEXIS 167860, at *16-17. In *Blackbird*, transfer to N.D. Cal. was granted where "all members of [defendant's] technical team responsible for the development of the accused technology, all members of its finance team, and the vast majority of its marketing team [were] in California." *Id.* at *18; *see GE Capital*, 2010 U.S. Dist. LEXIS 105011, at *22; *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 104 (1st Cir. 2009). "[T]he center of gravity for this dispute is in" N.D. Cal. *Snöfrost AB v. Håkansson*, 353 F. Supp. 3d 99, 110 (D. Mass. 2018). 10X has these strong ties to N.D. Cal., not Massachusetts. Wyatt Decl. ¶ 3; *see Hyewoong Yoon*, 2019 U.S. Dist. LEXIS 219029, at *15.

Further, as the Federal Circuit has stated, and Bio-Rad quoted in its own transfer motion in another case, "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." Ex. 2, *GE Healthcare*, ECF No. 11 at 17 (quoting *In re Hoffmann-La Roche*, 587 F.3d at 1336). In Bio-Rad's motion, the facts supporting the local interest factor were the location of headquarters and witnesses, and the development, manufacture and management for the accused products. *Id*. The same facts are present here.

Even more importantly, this case has a uniquely important local interest because 10X's CEO, Dr. Saxonov, is the sole named inventor on the 115 Patent, and his work and reputation will feature prominently in this case. Dr. Saxonov worked at Bio-Rad in N.D. Cal. for approximately 6 months as a result of Bio-Rad acquiring the company QuantaLife. Although the provisional application that led to the 115 Patent's parent, the 059 Patent, was filed before Dr. Saxonov left Bio-Rad, Bio-Rad filed the application from which the 115 Patent issued about two years after Dr. Saxonov left Bio-Rad. Ex. 1 ¶ 14 [Saxonov Decl.]. Bio-Rad represented to the USPTO, by naming Dr. Saxonov as the inventor, that the patent application and the claims based on it were conceived and reduced to practice solely by Dr. Saxonov while he was still at Bio-Rad and that the specification supported the claims. When Bio-Rad requested that Dr. Saxonov submit the inventor's oath, he responded with a declaration. He declared that he "did not authorize" the filing of this patent application and that he "believe[s] that Bio-Rad's proposed declaration is false and misleading with respect to the scope of what [he] invented prior to leaving Bio-Rad." *Id*. ¶ 4. Dr. Saxonov also declared that he "did not invent the subject matter of the currently pending claims of the Bio-Rad Continuations prior to [his] departure from Bio-Rad, and the disclosures of the Bio-Rad Continuations do not reflect that any such invention occurred as of the time" the parent

18

applications were filed. *Id*. Importantly, Dr. Saxonov declared:

> At the time of the application, I had not conceived of using any non-liquid vehicle for delivering barcode sequences into partitions for partition tagging. Indeed, at no point prior to leaving Bio-Rad did I conceive of using any such non-liquid vehicle. It was not until after I had left Bio-Rad and started working at 10X Genomics that the gel beads in 10X's products were first conceived and developed.

*Id*. ¶ 8; *see also* ¶¶ 14-18.

Despite Dr. Saxonov's unequivocal declaration, Bio-Rad continued to pursue claims of the 115 Patent and—remarkably—is now accusing 10X's products of infringing those claims. ECF No. 1; Ex. 1 *passim*. Thus, this case will present inventorship, invalidity, and non-infringement issues based on Dr. Saxonov's work and declaration. Related issues were litigated with respect to Bio-Rad's assertion of the 059 Patent as prior art in 10X's 1100 ITC Investigation, and will likely be litigated when Bio-Rad's currently stayed 4339 case resumes. 10X also expects that Bio-Rad may seek to litigate related issues in 10X's now-stayed California case.

### c.     Judicial economy favors transfer to N.D. Cal.

The First Circuit and this District consider judicial economy in transfer decisions. *See, e.g.*, *Interface*, 575 F.3d at 106; *GE Capital Leasing Corp. v. Parametric Tech. Corp.*, No. 07-11416-DPW, 2010 U.S. Dist. LEXIS 105011, at *23. "Patent cases involve highly technical factual determinations, and to require different courts to conduct such an extensive inquiry would be highly inefficient and could also lead to conflicting claim constructions. Because this case is closely related to the [4339 N.D. Cal. case], sound judicial economy necessitates transfer to that district." *Glaxo*, 2010 U.S. Dist. LEXIS 46440, at *9. Permitting multiple litigations here and in N.D. Cal. "could serve no purpose of judicial administration, and the risk of conflicting determinations as to the patents' validity and enforceability [is] clear." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 96 (9th Cir. 1982); *see Xilinx*, 2011 U.S. Dist. LEXIS 81986, at *11-12. The Federal Circuit has recognized that judicial economy "may be determinative to a particular

transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

### d.      Familiarity with the applicable laws

This Court and N.D. Cal. are familiar with the applicable federal patent laws. This factor is therefore neutral. *Iragorri*, 203 F.3d at 12.

### e.      Imposition on jurors for a case unrelated to their community

"[T]he unfairness of burdening citizens in an unrelated forum with jury duty" favors transfer. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981); *Iragorri*, 203 F.3d at 12. 10X has no meaningful connection to Massachusetts, and Bio-Rad failed to plead facts supporting any meaningful connection to Massachusetts specific to the 115 Patent. Massachusetts citizens should not be burdened with a case that is unrelated to Massachusetts. This is a business dispute between two businesses headquartered in N.D. Cal., and if it is to be heard by a jury at all, it should be heard by jurors in N.D. Cal.

## V.      CONCLUSION

10X respectfully requests that the Court grant its Motion.


Date: January 21, 2020                                Respectfully submitted,


                                                      /s/   *Matthew D. Powers*

                                                      Matthew D. Powers
                                                      Jennifer K. Robinson
                                                      Utsav Gupta
                                                      TENSEGRITY LAW GROUP, LLP
                                                      555 Twin Dolphin Drive, Suite 650
                                                      Redwood Shores, CA 94065
                                                      Telephone:      (650) 802-6000
                                                      Facsimile:      (650) 802-6001
                                                      matthew.powers@tensegritylawgroup.com

jen.robinson@tensegritylawgroup.com
utsav.gupta@tensegritylawgroup.com

Azra M. Hadzimehmedovic
TENSEGRITY LAW GROUP, LLP
8260 Greensboro Drive, Suite 260
McLean, VA  22102
Telephone: (703) 940-5032
Facsimile: (650) 802-6001
azra@tensegritylawgroup.com

Sarah Chapin Columbia (BBO #550155)
Katherine Nicole Clouse (BBO #683177)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, Massachusetts 02109
(617) 535-4000
scolumbia@mwe.com
nclouse@mwe.com


10X_BR1699_Service@tensegritylawgroup.com


*Attorneys for Defendant 10X Genomics, Inc.*

### CERTIFICATE OF SERVICE

The undersigned certifies that on January 21, 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will issue an electronic notification of filing to all counsel of record.

*/s/ Matthew D. Powers*
Matthew D. Powers
