# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIO-RAD LABORATORIES, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br><br>       Plaintiffs,<br><br>    v.<br><br>10X GENOMICS, INC.,<br><br>       Defendant. | Civil Action No. 1:19-cv-12533-WGY |
| 10X GENOMICS, INC.,<br><br>       Counterclaim Plaintiff,<br><br>    v.<br><br>BIO-RAD LABORATORIES., INC.,<br><br>       Counterclaim Defendant,<br><br>    and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>       Nominal Counterclaim Defendant. | |

## 10X GENOMICS, INC.'S OPPOSITION TO PLAINTIFF BIO-RAD'S MOTION TO SEVER AND STAY 10X'S PATENT INFRINGEMENT COUNTERCLAIMS

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................1

II.  SEVERANCE IS UNWARRANTED BECAUSE THE PATENT AND LICENSE
     CLAIMS SHOULD BE LITIGATED TOGETHER .........................................................3

     A.   Any Conflicts Will Be Addressed By Adverse Parties Retaining Independent
          Counsel ...................................................................................................................3

     B.   10X's Counterclaims Present Common Factual And Legal Issues With Bio-
          Rad's Claims And Should Be Tried Together .......................................................5

III. STAYING 10X'S COUNTERCLAIMS IS INAPPROPRIATE BECAUSE 10X HAS
     STANDING REGARDLESS OF THE OUTCOME OF THE *1CELLBIO* CASE ............9

IV.  CONCLUSION ................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Acevedo-Garcia v. Vera-Monroig*,
    204 F.R.D. 26 (D.P.R. 2001) ................................................................................................5

*Acevedo-Garcia v. Vera-Monroig*,
    *aff'd*, 351 F.3d 547 (1st Cir. 2003) .......................................................................................5

*AsymmetRx, Inc. v. Biocare Med., LLC*,
    582 F.3d 1314 (Fed. Cir. 2009) ..........................................................................................4, 9

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    C.A. No. 17-189-LPS-CJB, 2019 U.S. Dist. LEXIS 157925 (D. Del., Sep. 13, 2019) ...........10

*TransCore, LP v. Elec. Transaction Consultants Corp.*,
    563 F.3d 1271 (Fed. Cir. 2009) .............................................................................................2

**Statutes**

35 U.S.C. § 271(b) ..................................................................................................................10

35 U.S.C. § 271(c) ..................................................................................................................10

**Rules**

Mass. R. Prof. Conduct 1.7 .......................................................................................................1

Mass. R. Prof. Conduct 1.7(b)(3) ..............................................................................................5

**I.    INTRODUCTION**

Bio-Rad's motion to sever and stay 10X's patent claims attempts to portray an ordinary event—10X's assertion of Harvard patents against Bio-Rad in a case already involving the same parties, licenses, and patents—as an "impossible conundrum" requiring severance. Bio-Rad's motion is wrong both on what 10X's counterclaims mean for this case and on the solution.

Harvard licensed two patents (via RainDance) that Bio-Rad is asserting against 10X.[1] Harvard also licensed multiple patents to 10X. 10X in its answer raised its own Harvard license as a defense to infringement. ECF No. 32 at 5, 16. Only 12 days after 10X answered, 10X amended its pleading to assert two of the patents from 10X's own Harvard license (U.S. Patent No. 9,029,085 ("085 Patent") and 9,850,526 ("526 Patent")) against Bio-Rad.[2] ECF No. 53. The assertion of a second set of Harvard-licensed patents under a license that was already at issue does not raise irresolvable conflict or logistical issues.

The conflict issue has a simple solution. Bio-Rad and Harvard are directly adverse and must be represented by independent counsel. *See* Mass. R. Prof. Conduct 1.7. Harvard already had interests on both sides of the case, including duties to its two licensees, before 10X's amendment. Even assuming it was proper for a single law firm to represent both Harvard and Bio-Rad against 10X then (given 10X's relationship with Harvard and the 10X-Harvard license defense), there is no legitimate question now that the Weil Gotshal law firm should have already withdrawn from representing Harvard in view of the counterclaims.

---

[1] The two asserted patents licensed by RainDance from Harvard are U.S. Patent Nos. 8,871,444 and 9,919,277 and will be referred to collectively as the Bio-Rad/Harvard Asserted Patents.

[2] The 085 Patent and 526 Patent will be referred to collectively as the 10X/Harvard Asserted Patents. These patents fall within the "2915 Patent Rights" defined in the 10X/Harvard license. *See* ECF No. 74-2, Ex. 1 at Exhibit 1.2. The 085 Patent issued from the U.S. Application with Serial Number 12/529,926, listed in ECF No. 74-2, Ex. 1 at Exhibit 1.2. The 526 Patent also issued from a continuation of that same application.

There is also no merit to Bio-Rad's assertion that adding two more Harvard patents makes this case unreasonably large or complex. The parties are already set to litigate whether 10X's license to the 10X/Harvard Asserted Patents provides 10X with an implied license or estoppel defense. 10X's defenses involve examining the scope of the patent rights 10X expressly licensed from Harvard (including the 085 and 526 Patents) and whether the Bio-Rad/Harvard patent infringement assertions attempt to derogate from the scope of rights granted by Harvard to 10X because of overlap between the patent claims. *See, e.g.*, *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279-80 (Fed. Cir. 2009) ("[I]n order for [defendant] to obtain the benefit of its bargain with [plaintiff], it must be permitted to practice the [asserted] patent to the same extent it may practice the [licensed] patents"). The parties are also set to litigate Bio-Rad's own practice of the 10X/Harvard Asserted Patents, which Bio-Rad contends is licensed, and what the 10X/Harvard and Bio-Rad/Harvard licenses mean for the appropriate remedies on Harvard-licensed patents in this space. The issues overlap and the Court already took these counterclaims into account in crafting discovery limits that apply to both sets of patent infringement claims in addition to antitrust counterclaims. ECF Nos. 39, 67.

Finally, Bio-Rad's argument that it has a sublicense from another company—1CellBio—that covers Bio-Rad's conduct is wrong and does not provide a reason to sever or stay these counterclaims. Bio-Rad's motion ignores that 10X has an ***exclusive*** (rather than "co-exclusive") license to the broad fields of (i) sample preparation for sequencing and (ii) generation of reagent libraries. ECF No. 74-2, Ex. 1 at § 1.1 (2915 Co-Exclusive Field), 1.9 (Field), 2.1(i). 10X has a "co-exclusive" license in the 2915 Co-Exclusive Field to "analysis and use of single or multiple cells in drops." *Id.* at § 1.1 (2915 Co-Exclusive Field). 10X has accused of infringement only the Bio-Rad methods that are within 10X's exclusive field and outside the 2915 Co-Exclusive Field.

2

The scATAC-seq assay that 10X is accusing of infringing the 526 Patent uses nuclei, not cells, in drops. ECF No. 53-8, Ex. H. Because the accused assay does not use "cells in drops," it is not in the 2915 Co-Exclusive Field and is not licensed to 1CellBio or Bio-Rad. For the 085 Patent, 10X accuses Bio-Rad's method of making gel bead reagent libraries, which does not involve using cells in droplets at all. ECF No. 53-7, Ex. G. 10X asserted the patents against only Bio-Rad's unlicensed methods. This is true regardless of what happens in the 1CellBio litigation. If 10X loses that case, 1CellBio and Bio-Rad will retain their field-limited licenses but Bio-Rad's accused conduct will remain unlicensed. If 10X prevails, Bio-Rad will have no license at all. Either way 10X has standing to bring these counterclaims. Bio-Rad's motion should be denied.

## II.   SEVERANCE IS UNWARRANTED BECAUSE THE PATENT AND LICENSE CLAIMS SHOULD BE LITIGATED TOGETHER

### A.   Any Conflicts Will Be Addressed By Adverse Parties Retaining Independent Counsel

Harvard's role on "both sides" of this case adds a complication but not the type that warrants severing claims. Bio-Rad does not cite a single case in which a party's status as a licensor to parties on opposite sides of the pleadings would prevent all issues from being tried together. This situation is far from atypical or irresolvable—Harvard itself has been in a similar position before. In *AsymmetRx*, a District of Massachusetts case with uncanny parallels to this one, Harvard had licensed a technology to one company and later licensed the relevant patents to a competing company. When those two companies litigated the patent infringement and license issues, the Federal Circuit held that Harvard was not only required to join the suit, but that it was most efficient for all of the conflicting duties to be hashed out in a single action:

> **Harvard, by granting licenses to two parties involving the same subject matter, has potentially put itself in the conflicting position of having to aid two licensees opposed to each other**. Complicating matters is the fact that Harvard is continuing to accept royalty payments from Biocare resulting from sales in the commercial diagnostic market that AsymmetRx asserts are infringing its patent

> rights. If anything, this added complication indicates that the purpose of Rule 19 to avoid multiple suits or incomplete relief arising from the same subject matter is best served by joinder of Harvard, which would **permit the relationships between AsymmetRx, Biocare, and Harvard to all be resolved at the same time** as well as solve the standing problem.

*AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1322-23 (Fed. Cir. 2009) (emphasis supplied). Here, the relationships between 10X, Harvard, and Bio-Rad cut across multiple issues relevant to both Bio-Rad's claims and 10X's counterclaims. As discussed below, there are numerous overlapping factual and legal issues stemming from Harvard's licenses of related technologies from Dr. David Weitz's lab[3] to two different companies, including whether both sets of patents are required to practice 10X's asserted claims, what additional royalty burden if any should apply if a company were to take licenses to both sets of patents, and how the licenses should be interpreted. As in *AsymmetRx*, these issues and the full relationships between the three parties related to the asserted patents and respective licenses should be resolved at the same time in the same case. The fact that there are two sets of patents implicated by Harvard's licenses to Bio-Rad and 10X rather than the one set in *AsymmetRx* provides an even stronger reason to resolve the disputes in a single case.

Bio-Rad argues that Harvard's position in this case of having to aid two licensees opposed to each other is "untenable" because Harvard could have difficulty navigating privilege issues, a problem that arises only because Harvard and Bio-Rad are still using common counsel. ECF No. 74 at 5. Harvard, though, did not join Bio-Rad's motion or proffer a need to continue using common counsel or express any challenge to finding competent counsel. Not only is there no requirement that a conflict be resolved in favor of permitting one firm to represent adverse parties, the rules of professional conduct all but preclude that outcome. Rule 1.7 prevents a firm from

---

[3] Dr. Weitz is a named inventor on all four of the Harvard patents in suit.

4

representing parties in direct adversity once those parties have claims against each other in the same action. *See* Mass. R. Prof. Conduct 1.7(b)(3). Even if the Court were to sever the claims, Bio-Rad and Harvard would still be directly adverse in concurrent and likely consolidated litigations. The only reliable way to resolve the conflict is for Bio-Rad and Harvard to retain independent counsel.

### B. 10X's Counterclaims Present Common Factual And Legal Issues With Bio-Rad's Claims And Should Be Tried Together

The 10X-Harvard patent counterclaims belong in this case. Bio-Rad addresses the severance factors in a single paragraph and asserts without support that there are few efficiencies to be gained by litigating Harvard's patents together. ECF No. 74 at 5. In fact, all five factors militate against severance. *See Acevedo-Garcia v. Vera-Monroig*, 204 F.R.D. 26, 30 (D.P.R. 2001) *aff'd*, 351 F.3d 547 (1st Cir. 2003).

***Same transaction or occurrence***: 10X's patent claims arise out of the same Harvard license at issue in the case through 10X's implied license and estoppel defenses. ECF No. 32 at 5-6, 16. The scope and applicability of the dueling 10X/Harvard and Bio-Rad/Harvard licenses and the 10X/Harvard and Bio-Rad/Harvard licensed patents was already at issue before 10X's amendment to assert its licensed patents against Bio-Rad.

***Common questions of law and fact***: Bio-Rad's practice of the 10X/Harvard Asserted Patents under Bio-Rad's royalty-bearing sublicense from 1CellBio involves questions of law and fact that will be at issue in this case whether or not claims are severed. Bio-Rad is asserting claims for relief based on Harvard-licensed patents; the terms of other Harvard licenses and sublicenses for patents covering the same competing products are likely highly material to damages and equitable relief. The factual question of whether both 10X's and Bio-Rad's products are "Licensed Products" that practice at least one "Valid Claim" in these patents is a common question between

5

Bio-Rad's infringement claims and the 10X counterclaims. ECF No. 74-7, Ex. 6 at 1.6 ("Licensed Product" definition).

***Conserving judicial economy***: The Court has already set a pretrial schedule and a discovery order covering all of the patent claims. ECF No. 39, ECF No. 49, ECF No. 67. Bio-Rad's claims and 10X's counterclaims involve the same three parties, the same licenses, and the same claim construction proceedings. There is no efficiency to be gained in going from one patent case involving three parties and a set schedule to two patent cases with the same parties but on separate schedules with new contentions, expert reports, dispositive motions, and trials.

Further, Bio-Rad's contention that this case may turn on a single issue of whether Bio-Rad already has a license covering all of its conduct suggests that 10X's counterclaims may not require the judicial resources of a typical patent case. Bio-Rad is not challenging the validity of the 10X/Harvard Asserted Patents.[4] While Bio-Rad served contentions related to non-infringement, it appears that Bio-Rad may already be paying royalties under the license and treating its products as being covered by Harvard's patent claims. ECF No. 74-7, Ex. 6 at 1.6 ("'Licensed Product' means any product, the manufacture, use, offer for sale, sale or importation of which falls within the scope of a Valid Claim"). Bio-Rad may already have admitted that its accused methods are covered by the 10X/Harvard patent claims. Thus, 10X's counterclaims may ultimately be resolved on narrow license and infringement issues that will not require significant judicial resources. Both 10X's and Bio-Rad's licenses will already be the subject of discovery, dispositive motions, and trial in this case and it would be inefficient to begin a separate case for Bio-Rad's license defense.

---

[4] Bio-Rad did not serve invalidity contentions under Local Rule 16.6(d)(4) on March 2, 2020, the date called for in the Court's Pretrial Scheduling Order (ECF No. 39).

6

***Avoidance of prejudice to 10X***: 10X's counterclaims highlight that the Bio-Rad/Harvard Asserted Patents do not exist in a vacuum. Bio-Rad's infringement of the 10X/Harvard Asserted Patents informs the equities between the parties, and the circumstances of the licenses inform the appropriate damages (if any) on Bio-Rad's patents. Bio-Rad seeks a trial where Harvard is not on "both sides," but such a trial would deny reality. 10X would be prejudiced if Bio-Rad were to exclude 10X's Harvard-based claims from this litigation.

10X would also be prejudiced if its patent claims were stayed. Contrary to Bio-Rad's assertions, these counterclaims are not "delayed." While 10X has had a license to the parent application of the 085 and 526 patents since 2013, Bio-Rad's accused method (scATAC-seq using nuclei) only became generally available in 2019. *See* Ex. A ["Bio-Rad Launches its scATAC-Seq Solution"]. Bio-Rad's alleged infringement started around one year ago and is only now ramping up in volume. These counterclaims were also not late additions to this case. 10X amended its answer only 12 days after filing the initial answer "as a matter of course" under Federal Rule of Civil Procedure 15. Before 10X amended its answer, 10X notified Bio-Rad and the Court in the joint statement that an amendment to add two patents to the case was coming, and the Court set a discovery schedule for all of the patent claims together. ECF No. 39 at 4 ("The limits 10X has requested comport with . . . (3) 10X's anticipated patent counterclaims on two patents it expects to assert in this case promptly."). 10X served infringement contentions on time on February 5, 2020, the same day that Bio-Rad served infringement contentions. Discovery is proceeding apace for both sets of patent claims. It would be prejudicial to 10X to undo that schedule and stay 10X's patent claims while leaving Bio-Rad's patents on schedule.

***Overlapping witnesses and documentary proof***: Both 10X's and Bio-Rad's patents in this case name Dr. David Weitz as an inventor. Dr. Weitz is also the founder of 1CellBio, the company

7

that purportedly sublicensed patent rights in a limited field to Bio-Rad. Severing the counterclaims could require Dr. Weitz to appear and provide discovery in two patent cases instead of one. 10X's initial disclosures list multiple other overlapping witnesses whose testimony is expected to address subject matter relevant to 10X's patent infringement counterclaims, Bio-Rad's patent claims, and 10X's defenses to those claims. Ex. B [10X Genomics, Inc.'s Initial Disclosures]. For example, former Bio-Rad employee Jeremy Agresti (now a third-party witness) is likely to have information about his development of Bio-Rad's accused products and Bio-Rad's pre-suit knowledge of 10X's asserted patents, on which Dr. Agresti is a named inventor. *Id.* at 12. He also will have knowledge related to Bio-Rad's asserted patents, where he is a prior artist. *Id.* Bio-Rad witnesses Annette Tumolo and Josh Shinoff (in addition to other Bio-Rad employees) have knowledge related to patent acquisition, licensing, and damages for both sets of patents, among other issues. *Id.* at 6-10. 10X witnesses Ben Hindson and Michael Schnall-Levin have knowledge relevant to both sets of patent claims, including the design and operation of 10X's products accused by Bio-Rad of infringement and also how those products relate to 10X's asserted patents. *Id.* at 3-4. Dr. Hindson also has knowledge relating to 10X's license from Harvard. *Id.* at 4.

There is also substantial overlap in documentary proof between the claims and counterclaims. Bio-Rad previously relied upon the large volume of documents produced in prior cases between the parties in arguing for limits on custodial discovery in this case because the documents already in this case "relating to virtually every aspect of the companies' businesses." ECF No. 65-2 at 11. On March 2, 2020, when Bio-Rad produced technical documents under Local Rule 16.6(d)(4)(a) to accompany its non-infringement contentions, Bio-Rad produced only 17 documents totaling 284 pages. While Bio-Rad's production is very likely incomplete, the small

8

volume of new documents suggests that Bio-Rad does not expect the technical issues introduced by 10X's counterclaims to require many non-overlapping sources of proof.

Severance is not appropriate because the relationships between the three parties related to the asserted patents and the respective licenses should all be resolved at the same time. *AsymmetRx*, 582 F.3d at 1322-23. That conclusion is the most efficient for the parties, for third parties like Dr. Weitz, and avoids prejudice to 10X.

### III. STAYING 10X'S COUNTERCLAIMS IS INAPPROPRIATE BECAUSE 10X HAS STANDING REGARDLESS OF THE OUTCOME OF THE *1CELLBIO* CASE

The lawsuit between 10X and 1CellBio provides no reason to stay 10X's counterclaims. 10X's patent claims as alleged do not depend on 10X prevailing in its state-court action. Any license 1CellBio (and Bio-Rad, by sublicense) could have is limited to the "2915 Co-Exclusive Field" in the 10X/Harvard license. ECF No. 74-2, Ex. 1 at § 1.1 (2915 Co-Exclusive Field). 10X's state-court case is an action for declaratory judgment that 1CellBio does not legitimately have any license at all within the 2915 Co-Exclusive Field because 1CellBio never met the contractual conditions set forth in Section 2.1.3 of the 10X/Harvard license, namely a "detailed development plan" and the Threshold Funding of $1,000,000 from an external source, by the dates specified in the 10X/Harvard license. ECF No. 74-5, Ex. 4 at ¶¶ 15-17. However, 10X's standing to assert the 10X/Harvard Asserted Patents here does not depend on the state court's ruling because 10X's infringement allegations are based on 10X's Field, which is exclusive, and are wholly outside of the 2915 Co-Exclusive Field and thus will not be affected by the declaratory judgment action.

10X's license from Harvard for the 10X/Harvard Asserted Patents is *exclusive* in the fields of sample preparation for sequencing and generation of reagent libraries. ECF No. 74-2, Ex. 1 at § 1.1 (2915 Co-Exclusive Field), 1.9 (Field), 2.1(i) (license is "exclusive" for 2915 Patent Rights in the Field except for the 2915 Co-Exclusive Field). The accused Bio-Rad products and methods

9

fall within 10X's Field and outside of the 2915 Co-Exclusive Field. For the 526 Patent, 10X accuses Bio-Rad's ATAC-seq assay for nuclei, which prepares chromatin for sequencing and puts "tagmented nuclei" in droplets. ECF No. 53-8, Ex. H. That method falls within the field of sample preparation for sequencing. For the 085 Patent, 10X accuses Bio-Rad's method of making barcoded gel bead reagents. ECF No. 53-7, Ex. G. That method falls within the field of generation of reagent libraries. Neither accused Bio-Rad method involves putting cells in droplets and so does not fall within the "2915 Co-Exclusive Field" requiring "analysis and use of single or multiple cells in drops." ECF No. 74-2, Ex. 1 at § 1.1. The 526 Patent assertion uses nuclei in drops rather than cells. The 085 Patent assertion does not involve cells in drops, it targets manufacturing methods upstream of any use of cells.

Bio-Rad's contention that its accused products can use cells in droplets as an alternative to using nuclei does not create a license defense or a standing problem. Bio-Rad can attempt to show that it promotes its products for a licensed use in addition to the unlicensed use. If Bio-Rad can show that the licensed use is a "substantial" use of a staple article, then Bio-Rad will not be liable for contributory patent infringement. *See* 35 U.S.C. § 271(c). Bio-Rad can still be liable for inducing infringement by intentionally inducing conduct outside of its licensed field. *See* 35 U.S.C. § 271(b); ECF No. 53 at ¶¶ 239-40. 10X accuses Bio-Rad's unlicensed conduct—both the manufacture of gel beads and the use and inducement of methods using nuclei rather than cells in drops—and 10X will show that Bio-Rad infringes outside of Bio-Rad's field-limited sublicense and within 10X's exclusive Field. A field-limited sublicense does not prevent 10X from charging Bio-Rad with inducement of infringement if Bio-Rad encourages acts outside of the protected field. *See Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, C.A. No. 17-189-LPS-CJB, 2019 U.S. Dist. LEXIS 157925, *7 (D. Del., Sep. 13, 2019) (Where license is restricted to a field,

defendant can be liable for inducement—even for "dual-use" products—outside the field unless "all of the acts" defendant induced were licensed).

In any event, there is no reason for Bio-Rad's standing contentions to wait for the 1CellBio litigation. There is no outcome of the state-court declaratory judgment action that could deprive 10X of the right to sue Bio-Rad for infringement outside of the 2915 Co-Exclusive Field. The state-court 1CellBio case is all but over, with trial having concluded in January and a decision expected any day. There is no reason to delay that process by severing and staying 10X's infringement counterclaims.

## IV.     CONCLUSION

10X's infringement counterclaims should proceed on the Court's schedule and should not be severed and stayed. Bio-Rad's motion should be denied.

Date: March 11, 2020

Respectfully submitted,

/s/     *Paul T. Ehrlich*

| | |
|---|---|
| Matthew D. Powers (*pro hac vice*) | Sarah Chapin Columbia (BBO #550155) |
| Paul T. Ehrlich (*pro hac vice*) | Katherine Nicole Clouse (BBO #683177) |
| Stefani C. Smith (*pro hac vice*) | Katrina Rogachevsky (BBO #691373) |
| Robert L. Gerrity (*pro hac vice*) | MCDERMOTT WILL & EMERY LLP |
| Jennifer K. Robinson (*pro hac vice*) | 200 Claredon Street, Floor 58 |
| Natasha M. Saputo (*pro hac vice*) | Boston, Massachusetts 02116-5021 |
| Utsav Gupta (*pro hac vice*) | Telephone:    (617) 535-4000 |
| Daniel Radke (*pro hac vice*) | Facsimile:    (617) 535-3800 |
| TENSEGRITY LAW GROUP, LLP | 10X-BR-MWE@mwe.com |
| 555 Twin Dolphin Drive, Suite 650 | |
| Redwood Shores, CA 94065 | Leah Brannon (*pro hac vice*) |
| Telephone:    (650) 802-6000 | Kenneth Reinker (*pro hac vice*) |
| Facsimile:    (650) 802-6001 | CLEARY GOTTLIEB |
| 10X_BR_MA_Service@tensegritylawgroup.com | 2112 Pennsylvania Avenue, NW |
| | Washington, DC 20037 |
| Azra M. Hadzimehmedovic (*pro hac vice*) | Telephone:    (202) 974-1500 |
| Aaron M. Nathan (*pro hac vice*) | Facsimile:    (202) 974-1999 |
| Samantha A. Jameson (*pro hac vice*) | Team-10X-Genomics-Litigation-CGSHOnly@cgsh.com |
| TENSEGRITY LAW GROUP, LLP | |
| 8260 Greensboro Drive, Suite 260 | |
| McLean, VA 22102 | |
| Telephone:    (703) 940-5033 | |
| Facsimile:    (650) 802-6001 | |
| 10X_BR_MA_Service@tensegritylawgroup.com | |

*Attorneys for 10X Genomics, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 11, 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will issue an electronic notification of filing to all counsel of record.

<em>/s/ Paul T. Ehrlich</em><br>
Paul T. Ehrlich