**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

BIO-RAD LABORATORIES, INC., and PRESIDENT AND FELLOWS OF HARVARD COLLEGE

Plaintiffs and Counterclaim Defendants,

v.

10X GENOMICS, INC.,

Defendant and Counterclaim Plaintiff.

---

10X GENOMICS, INC.,

Counterclaim Plaintiff,

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Counterclaim Co-Plaintiff as to certain claims,

v.

BIO-RAD LABORATORIES, INC.,

Counterclaim Defendant,

and

PRESIDENT AND FELLOWS OF HARVARD COLLEGE,

Counterclaim Co-Defendant as to DJ counterclaims.

Civil Action No. 19-cv-12533-WGY

**ORAL ARGUMENT REQUESTED**

*Electronically Filed*

**PLAINTIFF AND COUNTERCLAIM DEFENDANT BIO-RAD LABORATORIES, INC.'S MOTION TO RECONSIDER**

## I. INTRODUCTION

Bio-Rad writes to present new evidence regarding issue number three in the parties' joint discovery statement and to respectfully request that this court reconsider its ruling on Bio-Rad's request for leave to amend its infringement contentions in light of this new evidence. *See* ECF No. 186. In an interrogatory response dated August 26, 2020, 10X disavowed the accuracy of its own public documents depicting a feature of 10X's products directly relevant to the asserted patents. In light of this newly available information, Bio-Rad asks that it be allowed to make a modest amendment with respect the "genetic element linked covalently or non-covalently to a bead" limitation in the '277 Patent. It would be unjust to refuse Bio-Rad the opportunity to amend its responses to account for the alleged inaccuracies in 10X's public materials. New evidence has also come to light that provides additional support for the arguments Bio-Rad relied on in the joint discovery statement that justify reconsideration. Further, Bio-Rad's proposed amendment imposes no prejudice on 10X. 10X has been on notice of this theory since at least since July 3, nearly three weeks prior to opening claim construction briefing, and several months prior to the close of fact discovery, which is not yet complete.

## II. LEGAL STANDARDS

District Courts have inherent power to reconsider their own discovery-related judgments. *United States v. Sampson*, No. 01-10384-MLW, 2015 U.S. Dist. LEXIS 192752, at *6 (D. Mass. Nov. 13, 2015); *see also Miranda v. Deloitte LLP*, 962 F. Supp. 2d 379, 384 (D.P.R. 2013). Many First Circuit cases have found that "when faced with a motion to reconsider, the district court must apply an interests-of-justice test." *Douglas v. York Cty.*, 360 F.3d 286, 290 (1st Cir. 2004) (*citing United States v. Roberts*, 978 F.2d 17, 20 (1st Cir. 1992). Under this test, a court "must consider the unique facts of the particular case and revise its original decision if it would be unjust to maintain it." *Sampson*, 2015 U.S. Dist. LEXIS 192752, at *10. Other First Circuit cases have

explained that a district court may grant a motion for reconsideration in three circumstances: "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). Under either standard, newly presented evidence and an unjust decision are proper bases of a motion for reconsideration. *See id*; *see also United States v. Allen*, No. 06-10170-RCL, 2007 U.S. Dist. LEXIS 34419, at *4-5 (D. Mass. May 10, 2007) (finding that a motion for reconsideration "provides litigants with a vehicle to present the court with evidence uncovered after a ruling" under the interest-of-justice test).

Pursuant to Local Rule 16.6(d)(5), preliminary patent-related disclosures, including infringement contentions, may be amended by leave of court upon a timely showing of good cause and lack of undue prejudice to the non-moving party. L.R. 16.6(d)(5). Examples of circumstances that may support a finding of good cause in the absence of prejudice include a claim construction ruling different from that proposed by the moving party, discovery of material prior art, or discovery of nonpublic information about the asserted infringement that was not located, despite diligent efforts, before the service of the infringement charts. *Id*.

Several Courts, including the Northern District of California, have similar rules governing leave to amend contentions. *See Cardionet v. Infobionic, Inc.*, No. 1:15-cv-11803-IT, 2020 U.S. Dist. LEXIS 143373, at *12 (D. Mass. June 22, 2020) (citing favorably to the Northern District of California's discussion of the "dual objectives of setting deadlines for infringement contentions" in *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222, 1226 (N.D. Cal. 2019)). Historically, the good cause standard in amending contentions has served "to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories

at the start of the case." *See Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021, 2014 U.S. Dist. LEXIS 103214, at *5-6 (N.D. Cal. July 28, 2014). While these rules are in-part designed to encourage parties to promptly crystalize and communicate their theories of infringement, they deliberately leave open the possibility of amendment as the case progresses because the expectation that "a patentee would have a precise sense of its infringement theory at the outset is unrealistic" where the patentee may not have access to all pertinent information. *Id.* at *5. (*citing* Peter S. Menell et al., Federal Judicial Center, *Patent Case Management Judicial Guide* 4-14 (2009)) (internal citation marks omitted).

## III. FACTUAL BACKGROUND

Bio-Rad served preliminary infringement contentions with respect to the asserted patents on February 5, 2020. At issue here is claim 1 of the '277 Patent, which is reproduced below with the relevant portion in bold.

> 1. A method for conducting an enzymatic reaction, comprising the steps of:
>
> > providing a droplet generator to produce, under microfluidic control, a plurality of aqueous microcapsules surrounded by an immiscible continuous phase that comprises a fluorinated oil that comprises a fluorinated polymer surfactant, each of the plurality of microcapsules comprising an enzyme, ***a genetic element linked covalently or non-covalently to a bead***, and reagents for the enzymatic reaction;
> >
> > pooling the microcapsules into one or more common compartments such that a portion of the plurality of microcapsules contact each other but do not fuse with each other due to the presence of the surfactant; and
> >
> > conducting the enzymatic reaction on the genetic element of at least one of the plurality of microcapsules within the one or more common compartments.

Bio-Rad has accused 10X's microfluidic chips used in conjunction with its Chromium Instruments as infringing the '277 Patent. With respect to the first limitation of claim 1, Bio-Rad stated in its preliminary infringement contentions that "10X's product literature depicts a cell or other genetic material (e.g., a cell nuclei) being linked to a Gel Bead." Ex. 1, at 16. Bio-Rad supported this

statement with several images from 10X's product brochures, including the image below.

*Id.* at 17.

The bottom right hand portion of this image depicts a schematic of one of 10X's chip architectures, demonstrating the process by which 10X generates "GEMs" ("gel in emulsion"). The top right hand portion of the image provides a schematic of the makeup of 10X's barcoded gel beads, attached to which are oligonucleotides used in the barcoding and amplification of sample material. In its preliminary contentions, Bio-Rad primarily focused on the linkage of the cell, and the contents within the cell, to the gel bead, as support for 10X's infringement of the "genetic element linked covalently or non-covalently to a bead" limitation. Now, Bio-Rad simply wishes to expand on its citation to the depiction of 10X's gel beads to be clear that the barcoded oligonucleotide linked to the gel bead also constitutes a genetic element within the meaning of the claim.

## IV. ARGUMENT

### A. Newly Discovered Evidence Justifies Reconsideration of Bio-Rad's Request to Amend Its Infringement Contentions

Bio-Rad's request for reconsideration of issue number three in the Joint Discovery

Statement is justified based on the discovery of evidence that was not available prior to the submission of the joint statement on August 12, 2020. 10X's August 26, 2020 response to interrogatory No. 11 stated for the first time 10X's contention that its own publicly facing materials that Bio-Rad relied on when drafting its contentions—for example, the images in its product brochures and the videos on its website—are not accurate representations of how 10X's products work. It would be unjust for this court to maintain its prior ruling denying Bio-Rad the opportunity to amend its infringement contentions in light of 10X's contention that its public materials do not accurately represent its products.

In particular, in the videos on 10X's website, the cells and/or nuclei appear to be introduced into a channel of the microfluidic chip, where they attach to, and travel with, a gel bead until the cell and the bead are encapsulated in a GEM together. The sequence of images below includes screenshots from a video on 10X's website, which clearly depict a cell migrating toward and attaching to a gel bead, and then travelling through the remainder of the channel attached to the gel bead. This video can be found at https://www.10xgenomics.com/products/single-cell-gene-expression at the "See How it Works" link, and Bio-Rad encourages the Court to investigate for itself 10X's depictions of its products.









10X now contends that this video does not accurately depict the operation of 10X's products, at least insofar as the cells are shown to attach to the gel beads. At the time Bio-Rad served its preliminary infringement contentions, it could not have predicted that 10X would disavow the accuracy of its own public-facing information showing the way its products operate.

Relying on 10X's own public portrayals, Bio-Rad initially concluded that the cell (or other genetic material) used in 10X's products attaches to the gel bead and therefore meets the limitations of claim 1. 10X's technical documentation did not contradict these public materials, and it was not until 10X served its non-infringement contentions alleging that the "genetic element" limitation was not met that Bio-Rad was prompted to seek additional details. Bio-Rad investigated this issue both by reviewing 10X's documents, and by serving the above-referenced interrogatory on July 27, 2020, less than one month after the three-month stay was lifted in this case. It would be unjust to punish Bio-Rad for relying on 10X's documentation and propounding clear, succinct, contentions by now preventing Bio-Rad from expanding on an alternative theory that is in no way prejudicial to 10X now that 10X contends its public materials are wrong.

Other new evidence has also been recently discovered that further supports Bio-Rad's assertion of good cause in the joint discovery statement. 10X contends that the genetic material inside of the cell cannot attach to the gel bead because the bead is dissolved by the time the nucleic acids from inside the cell are exposed via cell lysis. That is, 10X contends that the gel bead is dissolved prior to the cell being lysed. Thus, according to 10X, Bio-Rad cannot rely on the genetic material inside of the cell as the claimed "genetic element linked covalently or non-covalently to a bead," and must point to another component in 10X's product as the claimed genetic element. However, new evidence has recently come to light that demonstrates that 10X's arguments in rebuttal to Bio-Rad's demonstration of good cause are unfounded.

In the joint discovery statement, 10X suggested that Bio-Rad should have inferred that the gel bead is dissolved prior to cell lysis because 10X's product brochures state that the gel beads dissolve "immediately." But 10X's employees have since testified that this description is inaccurate in depositions that occurred in September and October. *See* Schnall-Levin Dep. Tr. at

177:8-16 (explaining that the term "immediately" in 10X's product brochure "is not accurate because…those steps take some amount of time").[1] Further, fact witness depositions have also revealed that 10X's own employees are not even certain whether the cell is lysed before the gel bead is dissolved or vice versa. *See* Wheeler Dep. Tr. at 40:9-22 (when asked whether cell lysis takes "[m]ore or fewer minutes than it takes for the gel bead to dissolve" Dr. Wheeler answered that he does not "have the data to answer that question"); Schnall-Levin Dep. Tr. at 177:18-178:2 (stating that he was "not 100 percent sure how long it takes" for the cell to lyse and the gel bead to dissolve). It would be unjust to expect Bio-Rad to have understood fine details of 10X's products better than 10X's own employees, particularly in view of 10X's contentions that its own public documentation is inaccurate.

10X has also asserted that Bio-Rad should have known that the gel bead dissolves before the cell is lysed based information from previous litigation. However, this aspect of 10X's products was not at issue in prior litigation, and even if the information was available to Bio-Rad, it could not have relied on non-public information in its preliminary contentions.[2] Further, although there are documents from prior litigation relating to this issue in 10X's products that were the subject of that litigation, there was no indication that 10X's current products use the same materials referenced in these documents. And in fact, they do not. It was revealed in depositions that 10X has changed certain materials its Next GEM platform compared to its previous products. There is therefore no basis for Bio-Rad to have known the order in which various components

[1] Due to the confidential nature of the information contained in the deposition transcripts cited herein, Bio-Rad sought specific permission from 10X to refer to the quoted material. If the Court believes the full context of the information is important, Bio-Rad will file a motion to impound the relevant portion of the transcript and file the transcripts as Exhibits.

[2] At the time Bio-Rad served its preliminary contentions on February 5, 2020, 10X's technical documentation regarding the accused products had not been produced in this case. Further, a protective order had not yet been entered in this case at that time.

break down inside of a GEM.

Bio-Rad was also diligent in seeking its proposed amendment. Bio-Rad first discussed amending its infringement contentions with 10X in late March, less than two months after it served its preliminary infringement contentions. Shortly after this discussion, the Court stayed the case for three months. Once the stay was lifted on June 29, 2020, Bio-Rad promptly served its amended infringement contentions on July 3, 2020.

**B. 10X Will Not Be Prejudiced By Bio-Rad's Proposed Amendment**

10X will not be prejudiced if the Court allows the amendment requested by Bio-Rad. 10X was on notice of Bio-Rad's amended contentions more than two weeks before opening claim construction briefing, and long before the close of fact discovery, which is still ongoing. In fact, the parties agreed to exchange amended infringement contentions on July 3 to allow each party adequate time to adjust their claim construction briefing in view of any new theories. Further, this court has made clear that claim construction is an ongoing endeavor, and that the Court is open to hearing additional claim construction issues as disputes materialize.

The modest nature of Bio-Rad's proposed amendment also minimizes any potential prejudice to 10X. Bio-Rad has not substantially altered its theory of infringement and therefore does not seek to disrupt the goal of providing legal certainty via preliminary contentions. The same products are still accused, and the same portions of those products are relied on for the key elements of the claim. For example, Bio-Rad has not changed its theories with respect to the claimed droplet generator, the plurality of aqueous microcapsules, pooling the microcapsules, or conducting the enzymatic reaction. Even the claimed "bead" is the same. The only thing Bio-Rad wishes to expand on is its description of the component that constitutes the "genetic element linked covalently or non-covalently" to the bead. This change requires virtually no substantive work on the part of 10X. This amendment concerns 10X's own product, so no additional discovery is

necessary. Even if 10X had required discovery, it had plenty of time to conduct that discovery over the past four months.

## V. Conclusion

The new evidence presented in 10X's interrogatory responses and depositions of 10X employees demonstrates that it would be against the interests of justice to refuse Bio-Rad the opportunity to amend its infringement contentions, particularly after learning from 10X's contentions that its products do not work as advertised. Evolving and narrowing the substance of infringement disputes is a natural part of the litigation process, and it would be unjust to punish Bio-Rad for not accounting in its infringement contentions for the possibility that 10X would repudiate its own public descriptions of how its products work. Accordingly, Bio-Rad respectfully requests that the Court reconsider its ruling on issue number three of the Joint Statement Regarding Discovery Disputes, and grant Bio-Rad leave to amend its infringement contentions with respect to the "genetic element" limitation.

Dated: November 16, 2020

Respectfully submitted,

*/s/ Garland Stephens*

**WEIL, GOTSHAL & MANGES LLP**
Garland Stephens (admitted *pro hac vice*)
Justin L. Constant (admitted *pro hac vice*)
700 Louisiana Street, Suite 1700
Houston, TX 77002
(713) 546-5011
(713) 546-5217
garland.stephens@weil.com
justin.constant@weil.com

Edward R. Reines (admitted *pro hac vice*)
Derek C. Walter (admitted *pro hac vice*)
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3934
(650) 802-3022

edward.reines@weil.com
derek.walter@weil.com

Eric S. Hochstadt (admitted *pro hac vice*)
Xiaoxi Tu (admitted *pro hac vice*)
Scott T. Christopher (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
(212) 310-8583
eric.hochstadt@weil.com

**BIRNBAUM & GODKIN, LLP**

David S. Godkin (BBO # 196530)
James E. Kruzer (BBO #670827)
280 Summer Street
Boston, MA 02210
(617) 307-6110
(617) 307-6131
godkin@birnbaumgodkin.com
kruzer@birnbaumgodkin.com

*Counsel for Plaintiff and Counterclaim Defendant Bio-Rad Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 16th day of November 2020, I electronically filed the foregoing: Plaintiff and Counterclaim Defendant Bio-Rad Laboratories, Inc.'s Motion to Reconsider with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record in this case.

/s/ *Garland Stephens*

Garland Stephens