# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BIO-RAD LABORATORIES, INC. and PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br><br>      Plaintiffs,<br><br>  v.<br><br>10X GENOMICS, INC.,<br><br>      Defendant. | C.A. No. 1:19-cv-12533-WGY |
| 10X GENOMICS, INC.,<br><br>      Counterclaim Plaintiff,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Counterclaim Co-Plaintiff as to certain claims,<br><br>  v.<br><br>BIO-RAD LABORATORIES, INC.,<br><br>      Counterclaim Defendant,<br><br>and<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>      Counterclaim Co-Defendant as to DJ counterclaims. | |

**10X GENOMICS, INC.'S RESPONSE TO BIO-RAD LABORATORIES, INC.'S MOTION TO ADOPT PRETRIAL SCHEDULE**

10X agrees the Court should enter a new schedule and the trial-ready date should be extended, but such a schedule cannot be set until Bio-Rad completes production of the discovery the Court ordered on October 19. Bio-Rad asserts that discovery can be completed by December 18, one week from today, but Bio-Rad's delays make that impossible. The discovery Bio-Rad still has not provided despite the Court's Order is substantial—including at least 45,000 emails, responses to four key interrogatories relating to antitrust and damages contentions, email of its CEO Norman Schwartz so that Mr. Schwartz's deposition can be scheduled and proceed, and negotiations relating to nearly a dozen licenses. 10X has had to move to compel Bio-Rad's compliance with certain provisions of the Court's October 19, 2020 Order on the Joint Discovery Dispute Statement, ECF 186 ("Court's Order") and compel additional discovery including additional interrogatory responses and responses to requests for admission regarding key inequitable conduct and damages issues. ECF 203. Given the volume of discovery that Bio-Rad still has to produce and the slow pace at which Bio-Rad has been trickling in discovery over the last eight weeks since the Court's Order, it is entirely unrealistic to expect Bio-Rad to complete that production, and impossible for 10X to have sufficient time to review and use the productions in depositions in the one week remaining until Bio-Rad's proposed close of fact discovery (December 18) and the opening expert reports immediately after, the next business day (December 21).

Further, while 10X agrees with Bio-Rad that the trial-ready date should be extended, Bio-Rad's insistence on setting a trial date only one month after the original pre-pandemic trial-ready date is equally unrealistic, especially when both the Massachusetts backlog of cases for trial and the experience of courts in districts that have tried and now slowed down trials because of COVID-19 strongly suggests that setting a trial-ready date now would be illusory. Bio-Rad knows this but

asks for a schedule that cannot work with a trial date that will not hold because Bio-Rad wants to use the existence of a trial date (even if illusory) in another proceeding between the parties. Bio-Rad is attempting to convince the Patent Office not to institute an IPR proceeding challenging the validity of the patents-in-suit in this case based on the existence of a trial date in this case, without informing the Patent Office of all the reasons such a trial date would be illusory.

Bio-Rad should be ordered once again to comply with its discovery obligations and 10X's proposed schedule proposes reasonable deadlines by which Bio-Rad must comply. 10X's proposal also largely comports with the previously jointly submitted schedule, except that it proposes to allow the Court time to issue its summary judgment orders before the parties proceed to pretrial exchanges. Ex. 1 (Proposed Amended Pretrial Schedule).[1] This makes sense now that civil trials have been all but halted and rushing into pretrial submissions before the Court has had a chance to consider and rule on summary judgment motions, whereas trial is not likely to occur for months later, is imposing unnecessary urgency.

When the Court's October 19 Order issued, instructing the parties to "discuss and agree upon a new discovery cut off date," ECF 186 at 1, 10X tried to engage immediately in an orderly mutual completion of discovery but Bio-Rad refused. Now nearly two months later, because Bio-Rad has delayed its compliance with the Court's Order and refused to provide firm commitments for its remaining discovery obligations, the parties are in no better position than when the Order issued to predict when outstanding document discovery will be produced and, accordingly, when Norman Schwartz's and any continued depositions required by the emails and other documents

---

[1] This case has been consolidated with Stilla Technologies, Inc. for the purposes of discovery. Case No. 1:19-cv-11587-WGY, ECF 78 (D. Mass. Jan. 14, 2020). Stilla and 10X have agreed to the proposed pretrial schedule and Stilla has filed a proposed pretrial schedule with the same dates as 10X today.

ordered by the Court can be scheduled. To date, Bio-Rad has the current outstanding discovery obligations pursuant to the Court's Order or its own agreements to produce discovery:

- Produce emails pursuant to 10X search terms (ECF 186 at 69);

- Cooperate on the selection of 10X's fifth (last) custodian and produce emails pursuant to search terms (ECF 186 at 86; ECF 202; ECF 203);

- Produce Bio-Rad's CEO Norman Schwartz for deposition (ECF 186 at 40);

- Respond to key interrogatories seeking antitrust contentions and licensing relevant to damages and antitrust claims (i.e., Interrogatories 2, 3, 4, and 5, ECF 186 at 183-193);

- Produce licensing negotiations for "licenses [Bio-Rad] contends are comparable or otherwise relevant to the evaluation of a reasonable royalty"[2] and "Applera/Bio-Rad agreements; Life Technologies/Bio-Rad agreements, Bio-Rad/Caliper agreements; and RainDance/Caliper agreements," (ECF 186 at 115), which is a total of at least eleven licenses for which Bio-Rad has produced exceedingly few documents and appears to have produced no negotiations documents for many licenses;

- Produce complete detailed financial data for both Bio-Rad and RainDance from 2011 to the present in Bio-Rad's possession [10X RFP Nos. 79, 80, 148] (ECF 186 at 158; ECF 141 at 160);

- Produce its CEO Norman Schwartz's deposition transcript and exhibits from the Paladin matter (ECF 186 at 120);

- Produce deposition exhibits to Annette Tumolo and Sanford Wadler from the Paladin case (ECF 186 at 120);

- Produce financials reflecting US sales/transfers of the Bio-Rad accused ATAC-SEQ products and information reflecting Bio-Rad's global sales/transfers of ATAC gel beads products; and

- Produce documents related to the alleged markets, products, and Bio-Rad's strategy and marketing within those markets from 2016 to present, in particular pertaining to the ddPCR market and products. (ECF 186 at 152; Nov. 25, 2020 Email from A. Sawyer, Bio-Rad's counsel, to N. Saputo, 10X's counsel

---

[2] Bio-Rad has identified the following as comparable agreements Applied BioSystems/QuantaLife; Applera/Bio-Rad; RainDance/Caliper; MRC/RainDance; RainDance/Harvard; LLNL/QuantaLife; LLNL/RainDance; University of Chicago/RainDance; Institut Curie/Bio-Rad. Bio-Rad's Third Supp. Resps. to Interrog. No. 6 at 25.

3

(confirming Bio-Rad has not completed production on this issue)).

In addition to moving to compel Bio-Rad's compliance with the Court's Order on cooperation on the selection of custodians, 10X has moved to compel Bio-Rad's own stipulation that it would produce certain discovery, and to provide responses to certain interrogatories and requests for admission. ECF 202; ECF 203.

While Bio-Rad states it "believe[s] that [it] will be able to complete discovery by December 18, 2020," it provides no explanation as to why it thinks that can be achieved when it has refused to provide any date certain to 10X to produce the aforementioned discovery and it has failed to produce the above-identified multiple and voluminous categories of Court-ordered discovery a week before its proposed arbitrary cutoff. ECF 192 at 1. Bio-Rad merely asserts the Court should adopt its schedule "[g]iven that the parties have already been given an additional two months for fact discovery," *id.* at 2, but Bio-Rad is nowhere near the compliance with the Court's Order on discovery. Indeed, Bio-Rad acknowledges that the parties have yet to agree on certain search terms. *Id.* Neither Bio-Rad nor 10X can complete their ESI productions by next Friday, and indeed both require substantial additional time to complete it. 10X's proposal for completion in a month and a half is more than reasonable. Bio-Rad cites no changed circumstances to warrant the premature close of discovery. Even once ESI is produced, 10X will need to review over 45,000 emails and other documents Bio-Rad has yet to produce. For example, Bio-Rad has yet to produce at least 6,000 emails from Bio-Rad's CEO Mr. Schwartz, which 10X will have to review before it takes Mr. Schwartz's deposition—a deposition for which Bio-Rad has still not even provided a date. Further, once Bio-Rad completes document production, 10X will have to review that production and determine whether to seek continued depositions or depositions of other personnel based on the discovery Bio-Rad is still withholding but which is expected to be substantial and important. Bio-Rad misses the point that the additional time is to produce and complete discovery. Imposing

4

a discovery cutoff in one week with this much outstanding discovery is unreasonable as it is impossible to complete that discovery.

Even if December 18 were an achievable date for the close of discovery, which it is not, the rest of Bio-Rad's schedule does not make sense and defeats the purpose of the Court's Order for additional discovery.[3] For example, Bio-Rad would have expert reports due just ***the next business day*** after the close of fact discovery. As mentioned above, Bio-Rad has yet to provide many thousands of emails and documents and complete Court-ordered interrogatory responses to key 10X interrogatories that are highly relevant to 10X's antitrust claims, including market definition and substitutability, as well as patent damages. The significant amount of fact discovery that Bio-Rad is still withholding is essential for the parties to develop their cases, including for experts to assess for their expert reports, and two weekend days for 10X's four experts to consider substantial discovery that has not yet been served is an unnecessary fire drill in a case where stakes are very high. It is improper for Bio-Rad to force arbitrary deadlines where ***it*** has caused the delay in completion of the Court-ordered fact discovery.

Further, Bio-Rad's proposed trial date of May 2021 ignores the realities of current court proceedings and the backlog of trials due to COVID-19. During an October 29, 2020, informational session about the District's plans for resuming jury trials, Chief Judge Saylor provided information making it clear that this case will not proceed in May 2021, as Bio-Rad now proposes, and likely not until 2022. There is currently a six-month backlog of trials; criminal trials

---

[3] Bio-Rad's proposed schedule omits a date for the Amendment of Pleadings Without Leave of Court. ECF 192 at 1 n. 3; 192-1. The Court had previously ordered such a deadline for both patent and antitrust claims. ECF 39 at 21. Moreover, Bio-Rad more recently agreed to such a deadline for at least the patent case. ECF 114-1 at 3. It is improper for Bio-Rad to now attempt to exclude previously ordered discovery events, and it would be prejudicial to 10X to do so when discovery is still ongoing.

5

will be the priority; and civil trials remain postponed with the first civil trial unlikely to be scheduled prior to 2021. As Bio-Rad is aware, the trial setting procedure announced by Chief Judge Saylor is that civil jury trials (when they resume, which they have not yet) will be set by the Court centrally, not by individual judges because of the need to coordinate courtroom usage. Further, in Texas, where the courts proceeded with jury trials during COVID-19, all patent trials have been halted for the rest of 2020 and postponed until at least 2021, Ex. 2 ("Texas Patent Trials Halted Due To COVID-19 Spike,"), citing the cause as health concerns due to COVID-19 outbreaks, including one case that ended up in a mistrial because 15 participants (including jurors, court staff, and members of both the defense and plaintiff teams) tested positive. Ex. 3 ("EDTX Trial Derailed by COVID-19 Outbreak Reset for January"). This Court had projected a trial ready date for this case of April 2021 at the outset of this case and before the pandemic, and Bio-Rad cannot credibly believe this trial is staying substantially on its pre-pandemic schedule when the pre-pandemic discovery deadline has long passed, trial dates across the country have been delayed for months, and the Chief Judge of this district has provided updates that suggest that this district's civil cases will continue to be significantly delayed.

      Bio-Rad provides no justification for its arbitrary deadlines and the timing is clear that Bio-Rad's schedule proposal was submitted to the court not to litigate the merits of this case but to manipulate the procedure of another forum. Ex. 4 (Bio-Rad's Brief to PTAB). On the day of the Court's Order, 10X attempted to engage Bio-Rad, and then, after weeks of avoidance, Bio-Rad suddenly proposed a unilateral schedule that would make completion of fact discovery impossible and leave the expert witnesses no time to address the Court-ordered discovery. The timing was no accident. Bio-Rad started out trying to avoid or slow down its compliance with its Court-ordered obligations. But prompted by an email from the Patent Trial and Appeal Board ("PTAB"), Bio-

Rad apparently realized that its non-compliance with this Court's orders was jeopardizing its strategy to prevent IPR proceedings against its patents. In the related Board proceeding involving the patents-in-suit, Bio-Rad would like for the Board to use its discretionary authority to deny institution of the *inter partes* review proceedings. One factor the Board will consider is whether a trial date has been set in the district court litigation. It is no surprise that Bio-Rad submitted its unilateral schedule the day before its filing deadline at the PTAB telling the Court that somehow everything that Bio-Rad has delayed and refused to do for months could be finished in practically no time.

    For the reasons above, 10X believes adopting a rushed schedule right now is inappropriate and impractical. Once the parties have completed fact discovery, they should be in a far better position to agree on the rest of the schedule. If Bio-Rad is eager to move this case along, it should complete its discovery obligations, including in particular email productions, such that fact discovery can close. Bio-Rad is nowhere near that mark. In any event, if the Court prefers to have a schedule docketed, 10X proposes the Court adopt the schedule proposed in Exhibit 1. This schedule will allow parties sufficient time to produce, review, and complete fact discovery, and incorporate it into their expert reports. 10X's proposal also takes into account the reality we are living in and allows the Court the time to consider summary judgment and Daubert motions before the parties expend resources on pretrial disclosures that may prove unnecessary in light of the Court's summary judgment determinations. Rushing to conduct pretrial proceedings where the trial will not occur for many more months given the COVID-19 imposed delays is inefficient and costly. 10X respectfully requests that the Court enter the schedule 10X proposes.

Date: December 11, 2020

Respectfully submitted,

/s/  Matthew D. Powers

| | |
|---|---|
| Matthew D. Powers (*pro hac vice*) | Sarah Chapin Columbia (BBO #550155) |
| Paul T. Ehrlich (*pro hac vice*) | Katrina Rogachevsky (BBO #691373) |
| Stefani C. Smith (*pro hac vice*) | Annabel Rodriguez (BBO #696001) |
| Robert L. Gerrity (*pro hac vice*) | MCDERMOTT WILL & EMERY LLP |
| Jennifer K. Robinson (*pro hac vice*) | 200 Clarendon Street, Floor 58 |
| Natasha M. Saputo (*pro hac vice*) | Boston, Massachusetts 02116-5021 |
| Gina Cremona (*pro hac vice*) | Telephone:    (617) 535-4000 |
| Utsav Gupta (*pro hac vice*) | Facsimile:    (617) 535-3800 |
| Daniel Radke (*pro hac vice*) | 10X-BR-MWE@mwe.com |
| TENSEGRITY LAW GROUP, LLP | |
| 555 Twin Dolphin Drive, Suite 650 | Leah Brannon (*pro hac vice*) |
| Redwood Shores, CA 94065 | Kenneth Reinker (*pro hac vice*) |
| Telephone:    (650) 802-6000 | CLEARY GOTTLIEB |
| Facsimile:    (650) 802-6001 | 2112 Pennsylvania Avenue, NW |
| 10x_BR_MA_Service@tensegritylawgroup.com | Washington, DC 20037 |
| | Telephone:    (202) 974-1500 |
| | Facsimile:    (202) 974-1999 |
| Azra M. Hadzimehmedovic (*pro hac vice*) | Team-10x-Genomics-Litigation-CGSHOnly@cgsh.com |
| Aaron M. Nathan (*pro hac vice*) | |
| Samantha A. Jameson (*pro hac vice*) | |
| Kiley White (*pro hac vice*) | |
| TENSEGRITY LAW GROUP, LLP | |
| 8260 Greensboro Drive, Suite 260 | |
| McLean, VA 22102 | |
| Telephone:    (703) 940-5033 | |
| Facsimile:    (650) 802-6001 | |
| 10x_BR_MA_Service@tensegritylawgroup.com | |

*Counsel for 10X Genomics, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 11, 2020, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will issue an electronic notification of filing to all counsel of record.

*/s/ Matthew D. Powers*
Matthew D. Powers
